# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **GRAND BISCAYNE 670, LLC** | § | **PLAINTIFF** |
| v. | § | Civil No. 1:18cv357-HSO-JCG |
| **14510 LEMOYNE BOULEVARD, LLC** | § | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART PLAINTIFF GRAND BISCAYNE 670, LLC'S MOTION [10] FOR DEFAULT JUDGMENT

BEFORE THE COURT is Plaintiff Grand Biscayne 670, LLC's Motion [10] for Default Judgment against Defendant 14510 Lemoyne Boulevard, LLC. Plaintiff requests compensatory and punitive damages as well as attorneys' fees on its claims for breach of contract, tortious breach of contract, and conversion.

After due consideration of Plaintiff's Motion [10], the record, and relevant legal authority, the Court is of the opinion that the Motion [10] should be granted in part and denied without prejudice in part. Plaintiff Grand Biscayne 670 LLC is entitled to a default judgment against Defendant 14510 Lemoyne Boulevard, LLC, in the amount of $76,500.00, representing compensatory and punitive damages. Although Plaintiff has not provided credible evidence to support its request for attorneys' fees, the Court will allow Plaintiff thirty **(30) days** from the date of entry

1

of this Order to submit such evidence for the Court's consideration. If Plaintiff elects not to submit any further evidence by this deadline, the Court will enter a Default Judgment for the amount of compensatory and punitive damages only.

I. RELEVANT BACKGROUND

Plaintiff Grand Biscayne 670, LLC ("Plaintiff" or "Grand Biscayne"), filed suit in this Court against Defendant 14510 Lemoyne Boulevard, LLC ("Defendant" or "Lemoyne"), on November 8, 2018, advancing claims for breach of contract, tortious breach of contract, and conversion. Compl. [1]. The Complaint alleges that Plaintiff's assignor had previously entered into a Contract with Lemoyne for the purchase of real property in which the parties agreed that Lemoyne would pay the title insurance premiums associated with the purchase. *Id.* at 2; Ex. "A" [1-1]. The Contract was later assigned to Grand Biscayne, which now asserts that Lemoyne failed to pay these premiums in the amount of $51,500.00 when they were mistakenly charged to Plaintiff at the closing of the purchase on February 15, 2018. *Id.* at 3; Ex. "C" [1-3] at 1. Plaintiff made demand upon Lemoyne to reimburse it the $51,500.00 premium, but Lemoyne failed to pay or respond to Plaintiff's demands. *Id.* at 3; Ex. "C" [1-3] at 1.

Lemoyne was served with process but has never made an appearance in the case, nor has Lemoyne ever made any attempt to respond to the lawsuit. Executed Summons [5]. Accordingly, Plaintiff filed a Motion [8] for Entry of Default. The Clerk of Court entered an Entry of Default [9] on December 7, 2018, and Grand Biscayne subsequently moved for a default judgment. Mot. [10] for Default J.

Plaintiff seeks an award of $51,500.00 in compensatory damages, $25,000.00 in punitive damages, and $17,166.00 in attorneys' fees.  *Id.* 7-8.

## II. DISCUSSION

A. <u>Default judgment under Federal Rule of Civil Procedure 55</u>

Federal Rule of Civil Procedure 55 provides that, after the clerk has entered a default against a defendant for failure to plead or otherwise respond to a complaint, a plaintiff may apply for a default judgment.  *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.  *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).  "There must be a sufficient basis in the pleadings for the judgment entered."  *Nishimatsu Const. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 497-98 (5th Cir. 2015) (applying *Nishimatsu*).  To determine the sufficiency of the pleadings for entry of a default judgment, the United States Court of Appeals for the Fifth Circuit looks to Federal Rule of Civil Procedure 8.  *Wooten*, 788 F.3d at 497-98.

Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The plaintiff must provide the defendant fair notice of his claim and the "grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the

3

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). While "detailed factual allegations" are not required, pleadings that "are no more than conclusions, are not entitled to [an] assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

B. <u>Sufficiency of the pleadings</u>

Given Lemoyne's complete failure to answer the Complaint in a timely manner or at any time since the Court's entry of default, a default judgment is procedurally warranted. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998); *see Capital One Auto Fin. v. Nabors, Inc.,* 4:16-cv-244, 2019 WL 1320429, at *2 (N.D. Miss. Mar. 22, 2019) (weighing relevant *Lindsey* factors for default where party fails to respond and finding default procedurally warranted); *Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F. Supp. 2d 784, 803 (E.D. La. 2013) (weighing and finding same). As such, to determine the sufficiency of Grand Biscayne's pleadings, the Court accepts all well-pled factual allegations in the Complaint as true. *U.S. of Am. for Use of M-Co Const., Inc. v. Shipco General, Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("[T]he plaintiff's well-[pled] factual allegations are taken as true, except regarding damages.").

1. <u>Plaintiffs' breach of contract and tortious breach of contract claims</u>

Under Mississippi law, the elements of a breach of contract claim are (1) "the existence of a valid and binding contract" and (2) "that the defendant has broken, or breached it." *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224 (Miss. 2012). The Complaint [1] pleads the following relevant facts: (1) the contract at issue

4

provided that the seller, Lemoyne, would pay title insurance premiums for the purchase; (2) the original buyer assigned its rights under the contract to Grand Biscayne; (3) the premiums were mistakenly charged to Grand Biscayne and Lemoyne never paid the premiums or reimbursed Grand Biscayne for them; (4) Grand Biscayne sent a demand for payment to which Lemoyne did not respond; and (5) Lemoyne has maintained domain and control over the property. Compl. [1]. Taking all of Grand Biscayne's well-pled factual allegations as true, it has shown the existence of a "valid and binding contract" and that the "defendant has broken, or breached it." *Maness v. K&A Enters. Of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018). As such, there is a sufficient basis in the pleadings for a default judgment as to the claim for breach of contract. *See id.*

A claim for tortious breach of contract requires that a plaintiff establish that the defendant's actions in breaching the contract "were the product of gross, callous or wanton conduct, or, if intentional, are accompanied by fraud or deceit." *State Farm Fire & Cas. Co. v. Simpson*, 477 So. 2d 242, 250 (Miss. 1985); *see Zumwalt v. Jones Cty. Bd. of Sup'rs*, 19 So. 3d 672, 688 (Miss. 2009) ("Tortious interference with [ ] contracts requires proof of malice as an essential element."). Grand Biscayne asserts in relevant part that it demanded payment from Lemoyne for the title insurance premium, but that Lemoyne "has ignored those demands," that it has "no justifiable reason for failing to pay," and that its failure to pay "evinces malice or gross negligence/reckless disregard for Grand Biscayne's contractual rights to payment/reimbursement." Compl. [1] at 3. Thus, Plaintiff has stated a claim for

5

tortious breach of contract.

2. <u>Plaintiffs' conversion claim</u>

Under Mississippi law, a conversion claim requires "'a wrongful possession' with 'intent to exercise dominion or control over goods which is inconsistent with the true owner's right.'" *Midwest Feeders, Inc. v. Bank of Franklin*, 114 F. Supp. 3d 419, 426 (S.D. Miss. 2015), *aff'd*, 886 F.3d 507 (5th Cir. 2018) (quoting *Cmty. Bank, Ellisville, Miss. v. Courtney*, 884 So. 2d 767, 773 (Miss. 2004)). "Where one acquires possession of the property in a lawful manner, . . . his refusal to relinquish possession or control over the property after a demand . . . gives rise to the action." *Greenline Equip. Co. Inc. v. Covington Cty. Bank*, 873 So. 2d 950, 958 (Miss. 2002) (emphasis omitted). "Mississippi federal courts have stated that money and other intangible assets cannot be converted under Mississippi law unless the funds or other property can be specifically identified." *Morris Schneider Wittstadt, LLC v. Beau Rivage Resorts, Inc.*, 1:15-cv-403, 2016 WL 1254387, at *3 (S.D. Miss. Mar. 29, 2016); *Fid. & Guar. Life Ins. Co. v. Williams*, No. 1:06cv959-LG-RHW, 2008 WL 336605, at *5 (S.D. Miss. Feb. 1, 2008) ("A cause of action exists for conversion of money only when money is earmarked or otherwise identifiable, such as enclosed in a container like a bag or chest.").

Here, Grand Biscayne has pled that the Contract entitled it to the premium, that it was mistakenly charged a specific amount for the premium, that Lemoyne did not pay the premium provided for under the Contract, that Grand Biscayne has demanded payment from Lemoyne, and that Lemoyne "ignored" its demands for

6

payment. Compl. [1]. The amount of the insurance premium is specified in an exhibit attached to the Complaint [1]. Ex. "C" [1-3]. Thus, Grand Biscayne has sufficiently stated a conversion claim. *See Morris Schneider*, 2016 WL 1254387, at *3; *Midwest Feeders*, 114 F. Supp. 3d at 426.

C. <u>Amount of damages</u>

1. <u>Compensatory damages</u>

Grand Biscayne supports its request for compensatory damages in the amount of $51,500.00, with a copy of the title insurance premium, which was charged to it at closing. Ex. "C" [1-3]. Thus, Plaintiff has provided a sufficient basis capable of mathematical calculation to support an award of these damages, and the Court finds that Grand Biscayne is entitled to a judgment against Lemoyne for this amount. *See id.*; Fed. R. Civ. P. 55(b)(2); Compl. [1]. In addition to these compensatory damages, Grand Biscayne seeks punitive damages in the amount of $25,000.00 and attorneys' fees in the amount of $17,166.00. Mot. [10].

2. <u>Punitive damages</u>

Mississippi permits the recovery of punitive damages on tortious breach of contract and conversion claims. *See Courtney*, 884 So. 2d at 773 (stating that punitive damages are recoverable on conversion claim); *Hurst v. Sw. Miss. Legal Servs. Corp.*, 708 So. 2d 1347, 1350 (Miss. 1998) (stating that punitive damages are recoverable for tortious breach of contract). However, "Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed with caution and within narrow limits." *Life & Cas. Ins. Co. of Tenn. v.*

7

*Bristow*, 529 So. 2d 620, 622 (Miss. 1988).

To recover punitive damages, the defendant must have "acted with (1) malice, or (2) gross negligence or reckless disregard for the rights of others." *Am. Funeral Assur. Co. v. Hubbs*, 700 So. 2d 283, 286 (Miss. 1997) (quoting *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 293 (Miss. 1992)) (stating the common law standard for punitive damages applicable to claims for tortious breach of contract); *see Hurst*, 708 So. 2d at 1350; *see also Courtney*, 884 So. 2d at 773 (applying Miss. Code § 11-1-65 to a conversion claim and quoting same) ("Punitive damages may [only be awarded where] the defendant . . . acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.").

As the Court has noted, Grand Biscayne asserts that it demanded payment from Lemoyne for the title insurance premium, but that Lemoyne "has ignored those demands," and that it has "no justifiable reason for failing to pay." Compl. [1] at 3. Plaintiff states that Lemoyne's failure to pay "evinces malice or gross negligence/reckless disregard for Grand Biscayne's contractual rights to payment/reimbursement." *Id.* Just as Plaintiff has sufficiently pled claims for tortious breach of contract and conversion, so too has it has pled sufficient facts to establish that it is entitled to an award of punitive damages.

Based upon these well-pled factual allegations and upon the Exhibits appended to its Complaint [1], Grand Biscayne has established that it is entitled to an award of punitive damages in the amount of $25,000.00. Lemoyne has wholly

ignored Grand Biscayne's demand for payment, and it has defaulted and not offered any reason for its failure to pay at any time since the filing of this suit on November 8, 2018. Compl. [1]; Ex. "D" [1-4]. Based upon the evidence before the Court and the procedural posture of this case, the Court finds that Grand Biscayne is entitled to a judgment against Lemoyne for $25,000.00 in punitive damages.

    3.   <u>Attorneys' fees</u>

"When there is no contractual provision or statutory authority providing for attorney fees, they may not be awarded as damages unless punitive damages are also proper." *Puckett v. Gordon*, 16 So. 3d 764, 771 (Miss. Ct. App. 2009) (quoting *Greenlee v. Mitchell*, 607 So. 2d 97, 108 (Miss. 1992)); *see Wal-Mart Stores, Inc. v. Qore, Inc.*, 647 F.3d 237, 242 (5th Cir. 2011) (quoting *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)) ("In [diversity] case[s], where Mississippi law supplies the rule of decision, '[s]tate law controls both the award of and the reasonableness of fees awarded.'"). Because the Court has found that Grand Biscayne is entitled to punitive damages against Lemoyne, it may also recover reasonable attorneys' fees. *See Puckett*, 16 So. 3d at 771.

Grand Biscayne asserts that it is entitled to attorneys' fees equal to one-third of the insurance premium, which is presumptively reasonable under Mississippi case law. Mot. [10] at 7-8. The Mississippi Supreme Court has held that there is "a presumption 'that an award of one-third the amount of the indebtedness in collection matters is reasonable.'" *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 54 (Miss. 1998) (quoting *DynaSteel Corp. v. Aztec Indus., Inc.*, 611 So. 2d 977,

9

987 (Miss. 1992)). However, this presumption is only applicable to collections actions on open accounts, which have generally been "held to mean [ ] account[s] based on continuing transactions between the parties which have not been closed or settled but are kept open in anticipation of further transactions." *Mauldin Co. v. Lee Tractor Co. of Miss.*, 920 So. 2d 513, 515 (Miss. Ct. App. 2006) (quoting *Westinghouse Credit Corp. v. Moore, McCalib, Inc.*, 361 So. 2d 990, 992 (Miss. 1978)). That is not the case here. Grand Biscayne has instead pled that the insurance premiums were owed based on a single transaction, not on an "open account." Compl. [1].

An award of attorneys' fees "must be supported by credible evidence," *Regency Nissan, Inc. v. Jenkins*, 678 So. 2d 95, 103 (Miss. 1995), *as modified on reh'g* (Aug. 22, 1996), and "should not be plucked out of the air," *DynaSteel*, 611 So. 2d at 986; *see BellSouth*, 912 So. 2d at 446 (citing and quoting *Carter v. Clegg*, 557 So. 2d 1187 (Miss. 1990)) (stating that award of attorneys' fees should be substantiated by evidence). In this instance, Grand Biscayne relies on a one-third presumption for its request for attorneys' fees. It has not offered any evidence that it even incurred attorneys' fees nor does the evidence before the Court support its demand. *See Speights v. Speights*, 126 So. 3d 76, 82 (Miss. Ct. App. 2013) (Although the trial court is afforded court broad discretion, "award of attorney's fees cannot be upheld [ ] unless the record supports the award."). Because the Court cannot evaluate Plaintiff's demand for attorneys' fees, the Court will allow Plaintiff **thirty (30) days** from the date of entry of this Order to submit credible evidence to

support its request. If Grand Biscayne elects not to submit any evidence by this deadline, the Court will enter a Default Judgment for the amount of compensatory and punitive damages only.

4. Necessity of evidentiary hearing

Federal Rule of Civil Procedure 55(b)(2) provides that when a district court enters a default judgment, "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B) (stating the conditions under which a court may conduct an evidentiary hearing). The Court finds that no such hearing is necessary to determine the amount of damages at this time. The Court will reevaluate whether such a hearing may be necessary to determine the amount of attorneys' fees after Plaintiff submits evidence of the same.

III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff Grand Biscayne 670, LLC's Motion [10] for Default Judgment is **GRANTED IN PART**, and Grand Biscayne is entitled to compensatory damages in the amount of $51,500.00, and punitive damages in the amount of $25,000.00 on its claims against 14510 Lemoyne Boulevard, LLC, for a total amount of $76,500.00. Plaintiff Grand Biscayne 670, LLC's demand for attorneys' fees is **DENIED IN PART WITHOUT PREJUDICE** to its right to submit credible evidence of attorneys' fees for the Court's consideration within **thirty (30) days** of the date of entry of this Order. If Plaintiff does not submit such evidence within thirty (30) days, the Court will enter

a separate Default Judgment awarding compensatory and punitive damages only, pursuant to Federal Rules of Civil Procedure 55(b)(2) and 58.

**SO ORDERED AND ADJUDGED**, this the 17th day of April, 2019.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE